IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMORY FOSTER-RAYFORD (#2015-0826158), | ) ) ) | |
| Plaintiff, | ) ) | No. 17-cv-02957 |
| v. | ) ) | |
| EDDIE JOHNSON, et al., | ) ) | |
| Defendants. | ) ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Samory Foster-Rayford (#2015-0826158), by and through his counsel, TUCKER ELLIS, LLP, hereby demands judgment against the Defendants, Officers Charles Garcia and Stanley Figus, and, in support thereof, alleges the following:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 for violations of Mr. Foster-Rayford's rights, secured by the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

3. Venue is proper under 28 U.S.C. §1391(b) because, on information and belief, all parties reside in this district and the events giving rise to the claims asserted in this complaint occurred in this district.

## PARTIES

4. Plaintiff Samory Foster-Rayford is a forty-six year-old resident of Chicago, Illinois. Mr. Foster-Rayford is currently incarcerated at Hill Correctional Center in Galesburg, Illinois.

5. Upon information and belief, at all times relevant to this Complaint Defendants

Charles Garcia and Stanley Figus were Chicago police officers employed by the City of Chicago acting within the scope of their employment and under color of law.

## BACKGROUND OF THE CASE

6. Upon information and belief, on August 20, 2015, an Investigative Alert was entered by an officer in the Arson Section of the Chicago Police Department pertaining to an alleged arson that occurred at 3058 West Belmont, Chicago, IL 60618 on June 26, 2015.

7. The Investigative Alert named Mr. Foster-Rayford as the "offender" and stated that Mr. Foster-Rayford was "wanted for the aggravated arson as he was identified as the person who poured an ignitable liquid onto the 3rd floor at 3058 W. Belmont and ignited the same damaging the building and injuring Jeannine HEINZ." *See* Investigative Alert for S. Foster-Rayford (Aug. 20, 2015) (attached hereto as Exhibit A).

8. The Investigative Alert identified Mr. Foster-Rayford by name, address, date of birth, and social security number. *Id.* It also contained a description of Mr. Foster-Rayford's physical appearance as well as the make, model, color, and physical description of Mr. Foster-Rayford's automobile. *See id.*

9. On August 24, 2015 at approximately 11:40 A.M. Plaintiff Samory Foster-Rayford ("Foster-Rayford") was in his residence at 370 E. 60th Street, Apt. 101, Chicago, IL.

10. On August 24, 2015 Defendants, two members of the Great Lakes Warrant and Fugitive Task Force Charles Garcia (Badge #20728) and Stanley Figus (Badge #18305) (collectively "Defendants"), entered Mr. Foster-Rayford's residence through the rear door.

11. Prior to entering Mr. Foster-Rayford's home, Defendants knocked on Mr. Foster-Rayford's rear door and announced that they were from maintenance.

12. Upon hearing the knock and the announcement that the knock was from

maintenance, Mr. Foster-Rayford opened the rear door to his home at which time Defendants entered into Mr. Foster-Rayford's home.

13. After Defendants entered his home, Defendants asked Mr. Foster-Rayford for his name.

14. After Mr. Foster-Rayford identified himself as such, Defendants placed Mr. Foster-Rayford into hand cuffs inside of his home.

15. At this time, one of the Defendants went to Mr. Foster-Rayford's front door to let three additional officers into the home – Officers Rueban DelValle (badge #11075), Adam Crisclone (badge #1307), and Jerimiah Johnson (badge #8265).

16. Mr. Foster-Rayford did not consent to the entry of the three additional officers.

17. Mr. Foster-Rayford inquired whether Defendants had a warrant to enter his home.

18. Defendants responded that they did not have a warrant but, instead, that there was an "Investigative Alert" issued for Mr. Foster-Rayford.

19. Defendants told Mr. Foster-Rayford that "some detectives want to ask you questions about a fire."

20. Defendants removed Mr. Foster-Rayford from his home, and transported him to the 11th District Police Station, located at 3150 West Flournoy Street, Chicago, Illinois 60612.

21. Mr. Foster-Rayford was processed and held in police custody until August 25, 2015 at 3:45 P.M. when Mr. Foster-Rayford was formally charged with aggravated arson.

22. Upon information and belief, at no time did the Defendants request that Mr. Foster-Rayford voluntarily accompany the Defendants to the police station.

23. Upon information and belief, at no time between the entry of the Investigative Alert on August 20, 2015 and Mr. Foster-Rayford's arrest on August 24, 2015 did the Chicago

Police attempt to obtain a warrant for Mr. Foster-Rayford's arrest.

24. Mr. Foster-Rayford did not consent to the entry of Defendants into his home, believing maintenance to be at the door when he opened it.

25. Mr. Foster-Rayford was in custody at the time he forcibly removed in handcuffs and without his consent from his home.

### COUNT I: VIOLATION OF THE FOURTH AMENDMENT
### WARRANTLESS ENTRY INTO MR. FOSTER-RAYFORD'S HOME

26. The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further provides that "no Warrant shall issue, but upon probable cause[.]" U.S. Const. am. IV.

27. In order to enter into Mr. Foster-Rayford's home to effectuate an arrest, Defendants were required to obtain a warrant. *See, e.g., Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (noting that "police officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause.").

28. Investigative Alerts are a tool used by the Chicago Police Department for preliminary investigations pursuant to Special Order S04-16 (issued March 5, 2001) *available at* http://directives.chicagopolice.org/directives/data/a7a57be2-12b780f4-30412-b787-088f791c81 31bbf7.html (last visited June 7, 2018) (attached hereto as Exhibit B).

29. There are two types of Investigative Alerts: (1) Investigative Alerts issued with probable cause and (2) Investigative Alerts issued without probable cause. Ex. B, Special Order S04-16 at §IV.A.1-2.

30. The Investigative Alert for Mr. Foster-Rayford was marked as being issued with "probable cause."

31. An Investigative Alert issued with probable cause does not give police officers authority to enter into a subject's home.

32. When Defendants entered Mr. Foster-Rayford's home, they knew that they did not have a warrant for his arrest.

33. On August 24, 2015, Defendants entered Mr. Foster-Rayford's home without a warrant, placed him into handcuffs, and removed him from his home against his will.

34. No exigent circumstances existed to justify a warrantless arrest – the alleged offense at issue had been committed nearly than 2 months prior, the Defendants did not have a reason to believe Mr. Foster-Rayford was armed, there was not a likelihood that Mr. Foster-Rayford would escape, and the officers had no indicia that he intended to flee. Defendants knew where Mr. Foster-Rayford lived, where he worked, and what car he drove.

35. Upon information and belief, the five days between the entry of the Investigative Alert on August 20, 2015 and Mr. Foster-Rayford's arrest on August 24, 2015 was sufficient time for the Defendants or other officers to seek and obtain a warrant for Mr. Foster-Rayford's arrest.

36. Upon information and belief, between the entry of the Investigative Alert and Mr. Foster-Rayford's arrest, Defendants and other officers unjustifiably, unreasonably, and deliberately delayed and refused to obtain a warrant for Mr. Foster-Rayford's arrest.

37. Upon information and belief, Defendants had no lawful reason to be at Mr. Foster-Rayford's address except to effectuate a warrantless arrest.

38. By entering Mr. Foster-Rayford's home without a warrant and arresting him without a warrant, Defendants violated Mr. Foster-Rayford's rights under the Fourth Amendment.

**WHEREFORE**, Plaintiff prays for judgment against Defendants Charles Garcia and Stanley Figus in a fair and just amount sufficient to compensate Plaintiff for his damage and for any other such relief as the Court deems just.

Plaintiff demands trial by a jury.

Respectfully submitted,

TUCKER ELLIS
*/s/ Sherry A. Knutson*
Sherry A. Knutson
233 South Wacker Drive
Suite 6950
Chicago, IL 60606-9997
Telephone: (312) 624-6300
Facsimile: (312) 624-6309
sherry.knutson@tuckerellis.com

*Attorney for Plaintiff Samory Foster-Rayford*

# Exhibit A

## Investigative Alerts

**INVESTIGATIVE ALERTS**

Status: ACTIVE

- ID #: 299988060
- Inv. Alert #: 299988060
- Reported date: 00:47 20-AUG-2015
- ☐ No Probable Cause for Arrest
- ☒ Probable Cause for Arrest
- Offense Code: 1025 ARSON AGGRAVATED
- Other Identifiers:

**PERSON**
- Last Name: FOSTER-RAYFORD
- First: SAMORY
- Alias Last: RAYFORD
- IR #: 891352
- SSN: REDACTED
- Sex: MALE
- Height: 602
- Weight: 250
- DOB: REDACTED 1971
- Age: 44
- Hair Color: BLACK
- Eye Color: BROWN
- DL/ID #: F23678171174
- State: IL
- Race: BLACK

**LAST KNOWN ADDRESS**
- Type: RESIDENCE
- Street #: 18577
- Street Name: MEADOW LANE
- City: HAZEL CREST
- St: IL
- Phone #: 219-689-5783

**VEHICLE**
- Make: HYUNDAI
- Model: SONATA
- Type: AUTOMOBILE
- Year: 2007
- Style: SEDAN, 4-DOOR
- Color Top: WHITE
- Bottom: WHITE
- Other Marks: DAMAGED FRONT END

---

## Investigative Alerts — Complainant

**COMPLAINANT INFORMATION**

- ID #: 299988060
- Inv. Alert #: 299988060
- Last Name: HEINZ
- First Name: JEANNIE
- Residence: 3058 W BELMONT AVE, Apt 3, CHICAGO, 60618, IL, 312-953-7256, Beat 1411

**Justification for Request:**
Named offender wanted for the aggravated arson as he was identified as being the person who poured an ignitable liquid onto the 3rd floor at 3058 W. Belmont and ignited same damaging the building and injuring Jeannie HEINZ. Known to drive a white Hyundai with front end damage and a red hatch back with red tinted rims. Works as delivery of food at various

**Requesting Officer:**
- Star #: 20240
- Emp #: 9897
- Unit #: 603
- Last Name: GRANADON
- First Name: GREGORY

CLEAR Data Warehouse
Investigative Alerts Remarks For
Stop Order Number 299988060
Report Date= 8/9/2016   Requested By=

| CONTACT_PERSON | REMARKS |
|---|---|
| GREGORY GRANADON UNIT 603 ARSON SECTION | Named offender wanted for the aggravated arson as he was identified as being the person who poured an ignitable liquid onto the 3rd floor at 3058 W. Belmont and ignited same damaging the building and injuring Jeannie HEINZ. Known to drive a white Hyundai with front end damage and a red hatch back with red tinted rims. Works as delivery of food at various restaurants |

This results table currently has 1 records in it.
For Official Police Use Only! Not For Dissemination!

# Exhibit B



| | Chicago Police Department | **Special Order S04-16** |
|---|---|---|
| | **INVESTIGATIVE ALERTS** | |

| **ISSUE DATE:** | 05 March 2001 | **EFFECTIVE DATE:** | 06 March 2001 |
|---|---|---|---|
| **RESCINDS:** | G01-02 | | |
| **INDEX CATEGORY:** | Preliminary Investigations | | |

### I. PURPOSE

This directive

- A. discontinues the use of the term "stop order" and replaces it with the term "**investigative alert**."

- B. discontinues the use of the Stop Order or Cancellation Request form (CPD-31.961).

- C. defines categories of investigative alert.

- D. introduces the **Criminal History Records Information System (CHRIS) Investigative Alert Application System** to be utilized by the Bureau of Investigative Services (BIS).

- E. informs members of the availability of investigative alert data via CHRIS and local Hot Desk name checks.

- F. delineates responsibilities of BIS and the Identification Section.

- G. outlines procedures when processing investigative alerts and Temporary Wants.

### II. CHRIS INVESTIGATIVE ALERT APPLICATION SYSTEM

All requests for investigative alerts are entered and approved in CHRIS by sworn BIS personnel. Any BIS member with a responsibility for follow-up investigation may request an investigative alert via the CHRIS Investigative Alert Application System.

- A. Members will enter investigative alert requests into CHRIS utilizing the investigative alert application screen. Each person wanted must be entered separately.

- B. Supervisors will approve or reject investigative alert requests in CHRIS.

- C. An investigative alert is effective immediately upon approval and is available to Department members via CHRIS or Hot Desk name checks.

- D. CHRIS and Hot Desk name checks will display investigative alert and pertinent investigative alert data (i.e., required data listed in Item II-F of this directive) whenever a name check is run on an individual who has an investigative alert on file.

- E. The unit investigative alert file will be audited in accordance with Item III-A-6 of this directive to ensure that investigative alerts no longer needed are purged from the Investigative Alerts Application System.

- F. The following data is required to request an investigative alert:

1. Offense code

2. Name of subject (include all known aliases)

3. IR number

4. Physical description (sex, height, DOB, etc.)

5. Last known address

6. Justification for the investigative alert request

7. Requesting member's information (name, star number, unit, etc.)

8. RD number, in all instances that one has been issued.

III. RESPONSIBILITIES

A. Bureau of Investigative Services
Bureau of Investigative Services supervisors will ensure that:

1. a unit investigative alert file is maintained. The investigative alert file will contain sufficient information relating to the subject of the alert to allow any member of the investigating unit to handle the investigation if the requesting member is not available. Copies of all reports, documents, etc., supporting the investigative alert request and a summary of how the subject was involved in the crime or incident will also be included in the investigative alert file.

2. a copy of the subject's most recent photograph, if available, is attached to a paper copy of the approved investigative alert request and placed in the unit investigative alert file.

3. a current list of investigative alerts requested by the unit is maintained.

4. in the event a juvenile is involved or is alleged to be involved in an offense, every effort is made to apprehend the juvenile before an investigative alert is requested. This will include requesting that area Special Victims Section personnel search their files for pertinent information which would assist in the apprehension of the juvenile.

   NOTE: Members will follow the procedures outlined in the Department directive entitled "Processing of Juveniles and Minors Under Department Control" when processing or interrogating juveniles.

5. investigative alert requests are updated or canceled as necessary.

   NOTE: Any BIS member of the rank of sergeant or above is authorized to update or cancel an investigative alert.

6. the unit investigative alert file is audited each police period to ensure investigative alert requests on file are canceled when the subject of the alert has been apprehended or the investigative alert is no longer needed.

7. Temporary Want entry requests are telephoned or faxed to the Field Inquiry Section - Central Warrant Unit to be entered into the LEADS and/or NCIC

computer systems.

  8. the Help Desk is contacted if there is a problem with the CHRIS Investigative Alert Application System.

 B. Identification Section

If a fingerprint verification of an arrestee's identity indicates that an investigative alert is in effect, the Identification Section will immediately make notifications to both the district of detention and the unit which originated the investigative alert.

  **NOTE:** The Identification Section will notify the Cook County Fugitive Unit upon verification that the arrestee is a participant (inmate or offender) in an electronic home monitoring detention program supervised by the Illinois Department of Corrections, probation supervisory authority, sheriff, or any other office charged with authorizing and supervising home detention.

## IV. PROCESSING INVESTIGATIVE ALERTS AND TEMPORARY WANTS

 A. Field Officers

  1. Officers who run name checks on individuals who have an **Investigative Alert / Probable Cause to Arrest** on file will:

   a. take the subject into custody if not already in custody.

   b. process the arrestee in accordance with the procedures outlined in the Department directive entitled "Processing Persons Under Department Control." Indicate on the Arrest Report (CPD-11.420) that the arrestee is the subject of an Investigative Alert / Probable Cause to Arrest.

   c. notify the desk sergeant of the incident.

   d. notify the requesting BIS member's unit that the subject is in custody and indicate on the Arrest Report the name and star number of the investigating member notified.

    **NOTE:** If the investigative alert is for an arrestee who is a participant in an electronic home monitoring detention program, the officer will notify the Identification Section.

  2. Officers who run name checks on individuals who have an **Investigative Alert / No Probable Cause to Arrest** on file are reminded that **IF NO OTHER CRIME WAS COMMITTED, AN ARREST IS NOT AUTHORIZED.** Officers will:

   a. inform the individual that a BIS investigative member seeks to interview the individual about a specific police matter and request that the subject **voluntarily** accompany the officer(s) to the district station to speak with the investigating officer so that the matter may be resolved.

   b. if the individual consents, the officer will assist the individual to the district station, and:

    1. notify the desk sergeant of the incident.

  2. notify the requesting member's unit indicating that the subject of the investigative alert is at the district station voluntarily and has consented to speak with the investigating member.

  3. complete an **Information Report (CPD-11.461)** documenting the incident. Include the pertinent investigative alert data and indicate that the subject voluntarily accompanied the officer to the district station.

  4. forward a copy of the Information Report to the requesting BIS member's unit.

  5. forward the original Information Report to the Office of the Assistant Superintendent, Operations.

c. if the individual will not voluntarily accompany the officer(s) to the district station:

  1. complete an Information Report documenting the incident and include the pertinent data obtained from the investigative alert.

   **NOTE:** **IF NO OTHER CRIME WAS COMMITTED, AN ARREST IS NOT AUTHORIZED.**

  2. notify the desk sergeant of the incident.

   **NOTE:** **DO NOT DETAIN SUCH PERSONS IN ORDER TO MAKE NOTIFICATIONS.**

  3. notify the requesting member's unit that the subject was located.

  4. forward a copy of the Information Report to the BIS requesting member's unit.

  5. forward the original Information Report to the Office of the Assistant Superintendent, Operations.

d. if the subject is in custody for some other offense and a name check reveals Investigative Alert / No Probable Cause to Arrest, the officer(s) will:

  1. notify the requesting BIS member's unit that the subject is in custody.

   **NOTE:** It is not necessary to complete an Information Report if the subject has been arrested for some other offense and a name check reveals Investigative Alert / No Probable Cause to Arrest.

  2. document the Investigative Alert / No Probable Cause to Arrest and the name and star number of the investigating member notified on the Arrest Report.

3. Officers who run name checks on individuals who have a **Temporary Want** on file will:

        a.       take the wanted person into custody if not already in custody.

        b.       process the arrestee in accordance with the procedures outlined in the Department directive entitled "Processing Persons Under Department Control."

        c.       contact the Field Inquiry Section - Central Warrant Unit for direction on how to proceed with the Temporary Want arrest.

        d.       ensure that either the warrant information or the basis for probable cause has been articulated on the arrest report as soon as that information is available and prior to the arrestee being sent to court.

**B.**    Watch Commanders

If a person in custody is the subject of an investigative alert or Temporary Want, watch commanders will ensure that:

    1.       the investigative alert is investigated before an arrestee is let to bail.

        **NOTE:**    Whenever the detention of a person in Department custody would result in the subject being held more than **48 hours** from the time of arrest **and** the subject was arrested without a warrant **and** the approval of charges has not occurred, the subject must be **either** released without charging **or** sent before the appropriate court for a determination of probable cause. Members will refer to the Department directive entitled "Processing Persons Under Department Control" for further guidance.

    2.       the requesting BIS member's unit is notified.

    3.       the requesting BIS unit responds or notifies the district of detention if the investigative alert is no longer in effect.

    4.       the Identification Section is notified if the arrestee is a participant in an electronic home monitoring detention program.

    5.       the Field Inquiry Section - Central Warrant Unit is contacted for directions on procedures to be followed whenever a Temporary Want arrest is made.

**C.**    Bureau of Investigative Services

Bureau of Investigative Services sworn members will:

    1.       respond to the district station immediately upon notification that the subject of an investigative alert is in custody or at the district station on a voluntary basis (if the individual is the subject of an Investigative Alert / No Probable Cause to Arrest).

    2.       conduct follow-up investigations relative to information received from investigative alert Information Reports.

    3.       ensure that a supervisor is notified in the event an investigative alert is to be updated or canceled (i.e., additional information is available, a warrant has been served and the investigative alert is no longer necessary, complainant/witness is no longer available, etc.).

**D.**    Field Inquiry Section - Central Warrant Unit

When processing Temporary Wants, the Central Warrant Unit will:

1. enter Temporary Want requests into the LEADS and/or NCIC systems.

2. include any additional information and all known aliases.

3. place a copy of the Temporary Want request into the warrant file after entry has been made into the systems.

4. include a list of active Temporary Wants in the LEADS, NCIC or Hot Desk systems within the weekly listing of active warrants provided the Detective Division.

Terry G. Hillard
Superintendent of Police

00-113 ZMM(PMD)